**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.E. and B.E.**

**No. 21-0391** (Kanawha County 20-JA-645 and 20-JA-646)

**MEMORANDUM DECISION**

Petitioner Father E.E., by counsel Joseph A. Curia III, appeals the Circuit Court of Kanawha County's April 14, 2021, order terminating his parental rights to K.E. and B.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer N. Taylor ("guardian"), filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period and in denying post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner committed acts of domestic violence against the mother in the presence of the children, then two-year-old K.E. and five-year-old B.E. The DHHR alleged that the mother stated petitioner "frequently physically abuse[d] her" and that petitioner was serving parole for a "fleeing with reckless indifference" conviction. A Child Protective Services ("CPS") worker interviewed petitioner, who denied physical violence with the mother. Petitioner asserted that the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

mother was using methamphetamine and that the domestic violence allegations were related to an upcoming income tax refund. The DHHR attempted to implement a safety plan, but ultimately found it necessary to take emergency custody of the children.

The circuit court held a preliminary hearing later in December of 2020. At the time of the hearing, petitioner was incarcerated as a result of a parole violation for possession of marijuana. The mother testified that domestic violence occurred in the home for "two or three years." The mother further testified that immediately before the filing of the petition, petitioner had "struck her multiple times, choked her, and then left the house." Petitioner returned to the home to strike the mother again and hide her phone. The mother clarified that petitioner never harmed the children. A CPS worker testified that B.E. reported witnessing fighting between petitioner and the mother and that she "would cry and ask them to stop." B.E. also reported that she witnessed her parents "smoke things." Ultimately, the circuit court ratified the emergency removal of the children.

In February of 2021, the circuit court convened for an adjudicatory hearing. The mother moved for a preadjudicatory improvement period and testified in support of her motion. She provided details regarding the domestic violence in the home, including that petitioner "choked, slapped or pushed her[] and burned her with a cigar" in the presence of the children. The mother also testified that she filed for a divorce from petitioner and for a domestic violence protective order against him. Petitioner stipulated to the allegations in the petition and admitted that he "put his hands on" the mother. Petitioner stated that he heard the mother's testimony and confirmed it was true. The circuit court adjudicated petitioner as an abusing parent and the children as abused and neglected children.

Following his adjudication as an abusing parent, petitioner moved for a post-adjudicatory improvement period. He asserted that he had acknowledged the abuse and neglect the children had suffered. Further, he expected to be released from incarceration in June of 2021 and "would attempt to obtain domestic violence and anger management classes while incarcerated." The circuit court took petitioner's motion under advisement and informed petitioner that he could renew his motion at the dispositional hearing.

The circuit court held the final dispositional hearing in April of 2021. Petitioner remained incarcerated and participated telephonically. A DHHR worker testified that the DHHR was recommending termination of petitioner's parental rights. The worker testified that petitioner's parole had been revoked and that it would not be reconsidered until December of 2021. The DHHR worker further testified that petitioner had "an extensive criminal history, much of it pertaining to domestic violence" and that his behavior could not be corrected in a reasonable time, due to his incarceration. The DHHR worker also testified that petitioner fathered a third child from a different mother, who was not named in the petition, and explained that the DHHR would be filing a separate petition regarding that child.[2]

---

[2]Petitioner's third child is not at issue in this appeal.

Petitioner testified that he was willing to participate in domestic violence and anger management classes. He also testified that he would complete his incarceration in July of 2021. Petitioner testified that he had had no contact with his third child since that child's birth in 2011. He explained that he was incarcerated for grand larceny soon after the child's birth and had not provided any support for the child. Petitioner also acknowledged that the mother of K.E. and B.E. filed for and was granted a divorce from him and asserted that he would abide by her desire to separate from him. Petitioner believed that the divorce was filed on the grounds of "irreconcilable differences." However, the guardian moved the circuit court to take judicial notice of the final divorce order, which provided that the divorce was based on petitioner's cruel and inhumane treatment of the mother.[3] The mother testified and confirmed that the basis for the divorce was cruel and inhumane treatment.

Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and terminated his parental rights to the children. The court considered that petitioner was not incarcerated at the time of the filing of the petition. Rather, petitioner had been subsequently arrested for a probation violation, which occurred during the pendency of the abuse and neglect proceedings. The circuit court found that petitioner's criminal history was relevant to his ability to follow the law and the terms of an improvement period. The circuit court reasoned that petitioner was a habitual offender who failed to change his conduct in light of either the criminal or abuse and neglect proceedings. The court concluded that the DHHR presented clear and convincing evidence that petitioner had an extensive history of criminal charges and domestic violence, that he was currently incarcerated, that he had a third child whom he had abandoned, and that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future. Further, the circuit court denied petitioner post-termination visitation with the children due to the history of domestic violence in the home. Petitioner now appeals the circuit court's April 14, 2021, order that denied his motion for an improvement period and terminated his parental rights to the children.[4]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[3]*See* W. Va. Code § 48-5-203 (definition of cruel and inhuman treatment).

[4]The mother completed a preadjudicatory improvement period and retains her parental rights. K.E. and B.E. have achieved permanency in their mother's custody.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. Petitioner asserts that he acknowledged the allegations of domestic violence in the home, which implied he was likely to change his behavior. He argues that the circuit court placed undue emphasis on his criminal record and recent parole violation in support of its decision as his incarceration does not require the termination of his parental rights. Rather, petitioner avers that the circuit court should have considered "the nature of the offense for which [he was] incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused and neglected child[ren]'s best interests and paramount need for permanency, security, stability and continuity." *See Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3. He argues that the nature of his incarceration is related to "relatively minor" offenses (possession of marijuana and fleeing with reckless indifference) and that his term of incarceration would end only four months from the dispositional hearing. Petitioner believes that these factors weigh against the termination of his parental rights. Finally, petitioner emphasizes his testimony that he would participate in services, that he was never violent with the children, and that he would respect the mother's wishes to have no additional contact with him.

First, in order to be granted a post-adjudicatory improvement period under West Virginia Code § 49-4-610(2)(B), the parent must first "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

Here, petitioner failed to present any evidence, other than his own testimony, that he was likely to fully participate in an improvement period. To the contrary, the circuit court considered petitioner's failure to abide by West Virginia law and the terms of his probation during the proceedings, which is compelling evidence that petitioner would not abide by the terms of an improvement period. Moreover, the circuit court heard evidence that petitioner's criminal activity during the proceedings was a long-established pattern that led to petitioner's absenteeism as a parent. Petitioner admitted that he had not provided any financial or emotional support for a third child due to his incarceration for grand larceny in 2011. Petitioner also admitted to a history of domestic violence with the mother, which spanned multiple years and resulted in prior incarcerations. This Court has held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part. Petitioner's conduct during the proceedings demonstrated that he would continue to engage in criminal activity and be unable to participate in an improvement period. Accordingly, the circuit court did not err in denying petitioner's motion for an improvement period.

Likewise, we find the circuit court did not err in terminating petitioner's parental rights to the children. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." The record presented proves that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future. Petitioner engaged in a consistent pattern of criminal activity to the detriment of his children. The children witnessed extensive domestic violence in their home, and petitioner's criminal acts led to his incarceration, leaving the children without his support. As found by the circuit court, petitioner was granted probation as to his criminal sentence, yet petitioner violated the terms of his supervision and was incarcerated as a result. We agree with the circuit court that petitioner's consistent pattern of criminal activity, which was unabated by the State's intervention, established that there was no reasonable likelihood that the conditions of neglect and abuse could be corrected in the near future.

Further, we note that petitioner's reliance on this Court's holding in *Cecil T.* is misplaced. Petitioner quoted a portion of the third syllabus point, which provides in its entirety,

> *[w]hen no factors and circumstances other than incarceration are raised at a disposition hearing* in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3 (emphasis added). Here, the circuit court considered factors other than petitioner's incarceration at the dispositional hearing, including petitioner's extensive history of domestic violence against the mother, sometimes in the presence of the children, and his repeated engagement in criminal activity. Because the circuit court considered facts and circumstances other than petitioner's incarceration, the holding in *Cecil T.* is not controlling in this case. *See id.*

This Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood

5

under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's requisite findings are supported by the record and not clearly erroneous, we find no error in the termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying him post-termination visitation with the children. Petitioner testified that he had an emotional bond with the children, and he argues now that his testimony is "unrefuted" by the record.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Further, "[o]ur cases indicate that a close emotional bond generally takes several years to develop." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005). Other than petitioner's self-serving testimony, there was no evidence that he and the children shared a close emotional bond. Moreover, the circuit court was not convinced that his continued contact with the children would be in their best interests. The circuit court concluded that visitation with petitioner was not in the children's best interests due to the extensive domestic violence they witnessed in his care. Upon our review, we find no error in that conclusion. Petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 14, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton